UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KING TACO RESTAURANT, INC., a
California corporation,

        Plaintiff,

 v.

KING TACO EXPRESS, INC., a Nevada
corporation, EMMANUEL LUNA, an
individual, SOL CELENE ROJAS, an
individual,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:08-CV-00281-LRH-PAL

<u>ORDER</u>

Before the court is Plaintiff King Taco Restaurant's Motion for Attorneys' Fees (#49[1]).

Defendants King Taco Express, Emmanuel Luna, and Sol Celene Rojas (collectively "Defendants")

have not responded.

**I.    Facts and Procedural History**

      This is a trademark infringement and unfair trade practices dispute arising out of

Defendants' use of the name "King Taco Express."  Plaintiff is a California corporation that owns a

chain of restaurants that sell inexpensive Mexican food.  Since 1973, Plaintiff has used the "King

Taco" mark in connection with and to identify its restaurant services and to distinguish its products

---

[1]Refers to the court's docket entry number.

1    from similar products offered by other companies.  Plaintiff owns a registered trademark for "King

2    Taco" and two related design trademarks.  Plaintiff has restaurants in thirteen cities in California

3    and is currently seeking to expand into the Southwest.  In particular, Plaintiff is targeting Las

4    Vegas, Nevada for its next major expansion.

5            Defendant King Taco Express is a Nevada corporation that owns a restaurant in Las Vegas,

6    Nevada that also sells inexpensive Mexican food.  Since April 16, 2003, Defendants have been

7    operating the restaurant under the name "King Taco" or "King Taco Express."

8            On October 2, 2009, this court granted Plaintiff's unopposed motion for summary

9    judgement on the trademark infringement and unfair trade practices claims.  As the prevailing party

10   in the case, Plaintiff now seeks an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

11           On March 18, 2010, Defendants filed a motion to set aside the summary judgement order

12   (#52).  On April 23, 2010, the court issued an order (#56) granting Defendants thirty days to submit

13   briefing and evidence setting forth meritorious defenses to Plaintiff's claims.  On June 17, 2010,

14   after Defendants failed to submit any documents, the court issued a minute order (#58) giving

15   Defendants an additional seven days to comply with the April 23, 2010, order.  Because Defendants

16   have not responded, the court will deny the motion to set aside and will now address Plaintiff's

17   Motion for Attorneys' Fees.

18   **II.    Discussion**

19           Under 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to the prevailing

20   party in "exceptional cases."  *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting 15

21   U.S.C. § 1117(a).  While the statute does not define the term "exceptional," generally a trademark

22   case is exceptional when the court finds that the defendant acted maliciously, fraudulently,

23   deliberately, or willfully.  *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th

24   Cir. 2003); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (upholding

25   award of attorneys' fees under § 1117(a) based on finding that defendant acted "knowingly,

26                                              2

1    maliciously, and oppressively, and with intent to . . . injure").

2        Here, Plaintiff argues that it is entitled to an award of attorneys' fees because Defendants

3    willfully and knowingly infringed Plaintiff's trademarks.  (Pl.'s Mot. Attorneys' Fees (#49) 1:27.)

4    However, the record at the time of the summary judgement order (#46), which the court decided on

5    the merits, did not contain evidence showing the willful and deliberate nature of infringement.

6    Indeed, the court noted in its order on summary judgement that there was no evidence before the

7    court relating to Defendants' intent.

8        Nonetheless, the Ninth Circuit held in *Rio Properties* that even in the absence of evidence

9    showing the defendant's intent, the district court correctly determined on the basis of the entry of

10   default judgement that the defendant knowingly, willfully, and oppressively infringed on the

11   plaintiff's trademarks. 284 F.3d at 1023.  In particular, the Ninth Circuit affirmed the district

12   court's award of attorneys' fees based on the entry of default judgement for the defendant's

13   deliberate failure to comply with discovery orders.  *Id.* at 1021-23.

14       The Ninth Circuit subsequently held that the decision in *Rio Properties* "expressly

15   foreclosed" the argument that the infringement was not "malicious, fraudulent, deliberate or

16   willful" in cases where the complaint pled willful infringement and the district court entered default

17   judgement. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008)

18   (concluding that the grant of attorneys' fees under 15 U.S.C. § 1117(a) was proper, but remanding

19   for a recalculation of the amount).  Following the general rule of law that, upon the entry of default

20   judgement, the court accepts the factual allegations in the complaint as true, the court concluded

21   that when a complaint alleges willful infringement and the court subsequently enters default

22   judgement, the court must find for the purposes of attorneys' fees that the infringement was willful.

23   *Id.  See also Chevron U.S.A., Inc. v. In N Out Minimart on Broadway, Inc.*, No. C09-0018, 2009

24   U.S. Dist. LEXIS 53211, at *1-2, 2009 WL 1608458, at *1 (W.D. Wash. June 5, 2009) (holding

25   that the allegation of willful infringement and the entry of default judgement sufficiently

26                                                    3

established plaintiff's entitlement to attorneys' fees under the Lanham Act); *Gallup, Inc. v. Bus. Research Bureau (Pvt.) Ltd.*, No. C08-01577, 2009 U.S. Dist. LEXIS 33262, at *11-12, 2009 WL 941756, at *5 (N.D. Cal. Apr. 3, 2009) (awarding attorneys' fees pursuant to 15 U.S.C. § 1117(a) based on the allegation that defendants willfully infringed and the entry of default judgement due to defendants' failure to respond to the complaint); *BBQ Hut, Inc. v. Maelin Enters., LLC*, No.06-2050, U.S. Dist. LEXIS 109698, at *7-8, 2008 WL 2687685, at *3 (D. Ariz. July 3, 2008) (finding that upon the entry of default judgement, the court accepts the factual allegations of willful infringement as true, thus entitling the plaintiff to attorneys' fees under the Lanham Act).

Here, in its order on summary judgement, the court found that Defendants' failure to respond to Plaintiff's discovery requests resulted in the automatic admission of allegations relating to Defendants' intent.  As with the admission of facts as true upon the entry of default judgement, "[w]hen a party seeks discovery pursuant to Rule 36, a failure to timely respond to requests for admission results in automatic admission of the matters requested." *Wright v. Paul Revere Life Ins. Co.*, 291 F.Supp.2d 1104, 1111 (C.D. Cal. 2003) (internal quotation marks and citations omitted).

In the order on summary judgement, the court concluded that in failing to respond to Plaintiff's request for admissions, Defendants admitted the following: (1) the goods and services Defendants sell are identical to those Plaintiff sells; (2) Defendants promote their goods and services under the "King Taco Express" trademark in the same marketing channels as those used by Plaintiff; and (3) Defendants chose to use the "King Taco Express" trademark because of their knowledge of and familiarity with Plaintiff's "King Taco" trademarks in connection with Mexican food and related services.  On these facts, the court determined that Plaintiff had demonstrated an absence of material facts as to whether Defendants knowingly infringed Plaintiff's trademarks and knowingly represented that their restaurant is affiliated with Plaintiff's trademarks.

Although this court issued two orders (##56, 58) allowing Defendants to present evidence setting forth meritorious defenses to Plaintiff's claims, Defendants have not done so.  Accordingly,

4

1   no evidence on the record contradicts or questions the court's finding of willful infringement.

2   Moreover, prior to initiating this suit in March 2008, Plaintiffs requested that Defendants cease and

3   desist from using the "King Taco" trademark.  (Pl.'s Mot. Summ. J. (#44), Ex. 1, ¶ 17.)  As such,

4   since March 2008, Defendants knew that their use of the name "King Taco" infringed Plaintiff's

5   trademarks.  Further, it appears that Defendants continued to operate as "King Taco Express" until

6   March 2010, when they learned that they could no longer renew their business license under that

7   name because of the court's injunction.  (*See* Decl. Emmanuel Luna (#52) ¶ 4.)  Based on the

8   court's prior finding of willful infringement and the additional evidence suggesting that even after

9   Plaintiff initiated this suit, Defendants continued to infringe the trademarks, the court finds that the

10   trademark infringement in this case is exceptional and thus falls within the scope of 15 U.S.C. §

11   1117(a).

12       Plaintiff seeks to recover $39,052.00 in attorneys' fees.  This amount reflects the legal fees

13   Plaintiff incurred from March 3, 2008, through October 19, 2009.  In support of its request,

14   Plaintiff presents the declarations of Carol A. Gefis, Jay Y. Chiu, and Mark Borghese, along with

15   records itemizing the work performed and the fees incurred.  (Pl.'s Mot. Attorneys' Fees (#49), Ex.

16   1-3.)

17       To determine reasonable attorneys' fees, courts in the Ninth Circuit use the "lodestar"

18   method.  Under this method, the court multiplies the reasonable hourly rate by the number of hours

19   reasonably expended in the litigation.  *Morales v. City of San Rafael*, 96 F.3d 359, 363-65 (9th Cir.

20   1995).  In calculating the lodestar figure, the court considers the following the factors: (1) the time

21   and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the

22   legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the

23   case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed

24   on the client or the circumstances; (8) the amount involved and the results obtained; (9) the

25   experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11)

26                                                    5

1   the nature and length of the professional relationship with the client; and (12) awards in similar

2   cases. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.3 (9th Cir. 2000) (citing *Kerr v. Screen*

3   *Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

4          The first step in setting reasonable attorneys' fees is to determine the number of hours

5   Plaintiff's attorneys reasonably expended on the litigation. *Morales*, 96 F.3d at 363-65. Relevant

6   *Kerr* factors include (1) the time and labor required, (2) the results obtained and the amount

7   involved, and (3) the novelty and difficulty of the questions involved.

8          Here, Plaintiff's attorneys worked on this case for approximately one hundred and fifty nine

9   hours from March 3, 2008, until October 19, 2009. According to the declarations and itemized

10  records, attorneys from Oswald & Yap LLP worked on this case for 83.7 hours, and attorneys from

11  Weide & Miller, Ltd. for 74.3 hours. As their detailed records indicate, the attorneys spent these

12  hours preparing numerous motions filed in this case and researching applicable trademark law and

13  available legal remedies for Defendants' failure to comply with discovery. In light of the

14  substantial work required as a result of Defendants' failure to fully participate in this litigation and

15  cooperate during discovery, along with the complexity of this action, the total hours Plaintiff claims

16  are not excessive.

17         The second step in setting the reasonable attorneys' fees is to determine a reasonable hourly

18  rate. Factors relevant to this analysis include (1) the novelty and difficulty of the questions

19  involved, (2) the special skill and experience of counsel, (3) the quality of representation, and (4)

20  results obtained. *See id.* at 364 n.9. Here, depending on the attorney's experience, the hourly rates

21  of attorneys from Oswald & Yap LLP ranged from $195 to $335 per hour. The rate of attorneys

22  from Weide & Miller, Ltd. was between $255 and $265 per hour. Considering the experience and

23  training of the attorneys and the complexity of the subject-matter involved in this action, these rates

24  appear to be a reasonable reflection of the difficulty involved and the skill and time required in this

25  case.

26                                                         6

1    The final step in determining the reasonable attorneys' fees is to multiply the number of

2 hours reasonably worked by the reasonable hourly rate for each person who performed the work.

3 According to this calculation, the total fee for work completed by the attorneys of Oswald & Yap

4 LLP is $19,421.50.  Mr. Oswald worked on the case for 21.6 hours at a rate of $335 per hour for a

5 total of $7,236.00.  Mr. Chiu, worked for 60.3 hours at a rate of $195 per hour for a total of

6 $11,758.50.  Plaintiff also paid Ms. Gefis $427 for 1.4 hours at $305 per hour.  As to the attorneys

7 of Weide & Miller, Ltd., the total amount of their legal fees is $19,726.00.  Specifically, Mr.

8 Borghese worked 41.3 hours at a rate of $255 per hour and 29.5 hours at a rate of $265 per hour for

9 a total of $18,349.00.  In addition, Plaintiff paid Mr. Gile $1,377.00 for 5.4 hours of work

10 performed on this case at a rate of $255 per hour.  The total legal fees Plaintiff incurred in this

11 action are $39,147.50.[2]

12    There is a "strong presumption" that the lodestar figure represents a "reasonable fee" that

13 the court should enhance or reduce only in "rare and exceptional cases."  *Fischer*, 214 F.3d at 1119

14 n.4 (citation omitted).  In light of the court's earlier findings, Defendants' repeated failure to

15 comply with this court's orders and provide evidence in their favor, and the lack of opposition to

16 the Motion for Attorneys' Fees, the court will not reduce the attorneys' fees.  Thus, the court will

17 award Plaintiff attorneys' fees in the amount of $39,147.50.

18    IT IS THEREFORE ORDERED that Defendants' Motion to Set Aside Summary

19 Judgement Order (#52) is DENIED.

20 ///

21

22

23    [2]There is a slight discrepancy between the attorneys' fees Plaintiff sought and the amount the court will award.  In its calculation of the attorneys' fees, Plaintiff used an average billing rate of approximately $245 per hour for all attorneys. (Pl.'s Mot. Attorneys' Fees (#49) 6:13-15.) However, to determine reasonable attorneys' fees, the court multiplies the number of hours reasonably worked by the reasonable hourly rate for each person who performed work on the case.  *See Schneider v. Elko County Sheriff's Dep't*, 17 F. Supp. 2d 1162, 1166 (D. Nev. 1998); *Kasza v. Browner*, 932 F. Supp. 254, 259 (D. Nev. 1996) (calculating attorneys' fees based on individual, not average rates).

24

25

26

7

1    IT IS FURTHER ORDERED that Plaintiff's Motion for Attorneys' Fees (#49) is

2  GRANTED.  Plaintiff is awarded attorneys' fees in the amount of $39,147.50.

3    The Court Clerk shall enter judgment accordingly.

4    IT IS SO ORDERED.

5    DATED this 15th day of July, 2010.

6

7

8    _____
     LARRY R. HICKS
     UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26